[Sac. No. 3898. In Bank.—July 17, 1928.]

F. A. HILTON, Respondent, v. EMERY OLIVER et al., Appellants.

Charles W. Slack, Edgar T. Zook and C. F. Metteer for Appellants.

Martin I. Welch and Robert H. Schwab for Respondent.

SHENK, J.—In 1921 and 1922 the plaintiff was the lessee and in possession of 120 acres of land in Reclamation District No. 1000. In the latter part of the year 1921 he seeded the land with barley. On the ninth day of February, 1922, the crop was about two inches high. On that day a heavy rainstorm started and continued for three or four days. On February 12th one of the drainage ditches of the district located near the plaintiff's land overflowed and damaged the plaintiff's crops. Thereafter he brought this action for damages against the district and the individual defendants who were at the time the trustees of the district. Before trial the action was dismissed as to the district. The jury rendered a verdict against the trustees in the sum of $1,000 and from a judgment thereon this appeal is taken.

The complaint alleged "that on or about the 12th day of February, 1922, said defendants so negligently and care-

lessly maintained and operated" said drainage ditch that the ditch overflowed and the water therefrom covered the premises of the plaintiff and damaged his crops. It is not disputed that under certain circumstances the trustees may be held liable for negligence. (See *Perkins* v. *Blauth,* 163 Cal. 782 [127 Pac. 50]; *Proper* v. *Sutter Drainage District,* 53 Cal. App. 576 [200 Pac. 664].) Prior to 1923 the district itself was not liable for the negligence of its trustees. By section 3464 of the Political Code added in 1923 (Stats. 1923, p. 513) the negligence of the trustees of a reclamation district is made imputable to the district to the same extent as if the district were a private corporation.

The main contention of the defendants is that the evidence is insufficient to justify the verdict finding them guilty of negligence in the "maintenance and operation" of the drainage ditch. Negligence in the construction of the ditch is not charged against them.

Reclamation District No. 1000 was one of the first big tracts of overflowed land in the Sacramento Valley to be reclaimed under the Drainage District Act. The work of reclamation commenced in 1914. The area in the district comprises 54,000 acres of land and approximately 130 miles of drainage ditches were constructed therein. The particular ditch in question is known as the "L-lateral" and passes north and south within about 800 feet to the east of plaintiff's land. In the original plans it was determined from an engineering standpoint that this ditch should have a carrying capacity of 29 second-feet. By applying a safety factor the ditch was actually constructed with a carrying capacity of from 50 to 60 second-feet. The original plans called for the installation of a culvert opposite plaintiff's land as a means of furnishing a crossing for the convenience of land owners. This culvert, consisting of a 30-inch pipe, was installed in 1918 and was sufficient to carry the maximum flow of the ditch. In the course of time tules and other vegetable growth appeared in the drainage ditches which required removal annually. To remove this growth laborers were employed in 1921 under the direction of a foreman who performed his duties under the immediate direction of F. E. Awalt, who was occupying the position of field superintendent under appointment by the board of trustees. It is not claimed by the plaintiff that Mr. Awalt

was not qualified for the position nor that the trustees were remiss in any respect in his appointment. In removing the tules from the ditch above the culvert in 1921, the crew, working under the direction of the foreman, placed the cut tules on the bank of the ditch, there to remain until the same should be removed or destroyed. Following the rainstorm of February 9th to 12th, inclusive, in 1922, a large portion of the land in the district was inundated. The water covered from 10,000 to 12,000 acres of land according to one witness, and according to another witness from forty to fifty per cent of the entire area of the district was flooded from two to four inches deep, the water eventually running off in the canals. The field superintendent testified that "after the storm broke the canals were plugged up with all kinds of debris. Oil drums, gasoline barrels, boards, timbers, tumble weeds, debris of all description," were taken therefrom. The culvert in the "L-lateral" was clogged with debris and it was this stoppage of the water that caused the overflowing of the ditch. The plaintiff contended at the trial that the tules that had been cut by the employees of the district and placed upon the banks of the ditch were caught by the rising waters and floated down to the culvert and obstructed the passage of the water through it. On the proof of the maintenance of the culvert, the placing of the cut tules upon the banks of the ditch and the further proof that tules were removed from the culvert in order to release the water through the same, the plaintiff predicates his claim of sufficient proof of negligence against the defendant trustees. The plaintiff saw the water backing up in front of the culvert and testified that he endeavored to remove the obstruction, but was unable to do so. He noticed that tules were fastened in the head of the culvert and concluded that the entire obstruction was caused by tules, but employees of the district who got down into the water and removed the debris found boards obstructing the flow of water in the pipe. On these boards the tules and weeds had apparently fastened themselves. The evidence was undisputed that the culvert as constructed and maintained was sufficient to carry the maximum flow of the ditch, and there was no proof that the culvert had theretofore been clogged with debris or had theretofore caused an overflow of the ditch.

Assuming that the employees of the district working under the foreman were negligent in placing the cut tules on the bank of the ditch in such a way that during the storm they were caught by the rising waters and carried on to the culvert, thereby contributing to the obstruction and the consequent overflow, there was no evidence whatever in the record, either directly or by reasonable inference, that the defendant trustees knew anything at all about such action on the part of said employees in doing the work. Nor was there any evidence that the method followed by the said employees in disposing of the cut tules was directed or countenanced by or known to the trustees prior to said rainstorm and flood. Under these circumstances the negligence, of which we have assumed the employees were guilty, could not be imputed to the trustees of the district under well-established law of this state. The trustees were the agents of the district, a public corporation. The field superintendent and foreman of the crew were subordinate agents employed in the service of the common principal, the reclamation district. Section 2351 of the Civil Code provides: "A subagent, lawfully appointed, represents the principal in like manner with the original agent; and the original agent is not responsible to third persons for the acts of the subagent." The trustees in the case at bar were in the position of original agents as contemplated by the statute. As such original agents they were not liable to the plaintiff, a third person, for the negligence of their coservants or agents except under circumstances which do not here appear. The rule laid down or approved by the decisions in this state is that an agent is not in general liable to third persons for the misfeasance or malfeasance of a subagent employed by him in the service of his principal, unless she is guilty of negligence in the appointment of such subagent or directs or authorizes the particular wrongful act of the subagent or improperly co-operates in the latter's acts or omissions. (*Dobbins* v. *City of Arcadia,* 44 Cal. App. 181 [186 Pac. 190]; *Baisley* v. *Henry,* 55 Cal. App. 760 [204 Pac. 399].) The defendant trustees can be held liable under the facts shown herein only by reason of the application of the doctrine of *respondeat superior.* This doctrine has no application as between a public officer and his subordinates who are likewise in the public service, unless the public officer has

directed or countenanced the tortious acts to be done or has co-operated therein. (*Michel* v. *Smith,* 188 Cal. 199 [205 Pac. 113] ; *Whiteman* v. *Irrigation District,* 60 Cal. App. 234 [212 Pac. 706].) As the record herein does not disclose that the defendant trustees directed or co-operated in or knew of the alleged acts of negligence on the part of the subordinate agents and employees of the district or were at all remiss in the matter of their appointment, the evidence was wholly insufficient to support the verdict. The case of *Perkins* v. *Blauth, supra,* and the case of *Proper* v. *Sutter Drainage District, supra,* so strongly relied upon by the plaintiff, are not controlling. In the Perkins case the defendant trustees in their official capacity entered into a contract on behalf of the district for the doing of the particular work involving the tortious act that caused the damage. In the Proper case the defendant trustees knew of the defective condition of the ditch or lateral from which the plaintiff's land was flooded and continued its use in that condition with knowledge of the defects which had resulted in a prior flooding of the same land. With such knowledge they failed to control the cause so as to prevent it from inflicting further injury. In neither case was the doctrine of *respondeat superior* applied or applicable, for negligence was brought home to the trustees themselves.

Other points need not be discussed. The judgment is reversed.

Preston, J., Curtis, J., Richards, J., and Seawell, J., concurred.