[Civ. No. 6329.   Third Appellate District.—April 11, 1940.]

FRANCES E. REED et al., Appellants, v. WILLIAM R. MOLONY, M. D., et al., Respondents.

Martin E. Geibel for Appellants.

Earl Warren, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondents.

THOMPSON, J.—The plaintiffs have appealed from a judgment rendered against them pursuant to an order of court sustaining a general and special demurrer to their second complaint without leave to amend the pleading. By means of

replevin the complaint demanded recovery of possession of specific personal property or the value thereof together with alleged loss of possible earnings from a certain formula for the development of moving picture films.

The demurrer was filed by Mr. Molony, one of the members of the board, jointly with Mr. Byrne, the special officer. It was sustained on the ground that the members of the State Board of Medical Examiners are not liable for the tort of a subordinate officer even though it was performed under color of his office, and that the liability for the tort is barred by the statute of limitations.

Each defendant is sued as a member of the State Board of Medical Examiners, except William A. Byrne, who is sued as a special officer of the board. It is alleged that Byrne was employed as a special investigator of the board to secure evidence against other individuals for violations of the Medical Act of California under section 5 thereof. (Stats. 1913, p. 722, and amendments; Deering's Gen. Laws of 1931, p. 2344, Act 4807.) It is not alleged that the plaintiffs, or either of them, are physicians or that they were charged with violating any provision of the Medical Act. No such charge was made or filed against them. The only allegation of that nature contained in the complaint is the conclusion that Byrne secured information that Frederick W. Reed "had in his possession certain articles" which he "believed the possession of . . . constituted a violation of the provisions of the Medical Practice Act", consisting of United States Liberty Bonds in the sum of $3,000, two promissory notes of $1,000 each, a number of shares of Abilene Group Mining Stock of the par value of $6,000 and a formula for the production of motion picture films, from which "plaintiffs could have received royalties amounting to Two Hundred Thousand Dollars ($200,000.00) a month". It is not stated how the possession of this property constituted a violation of the Medical Act. It is alleged that, in September, 1928, William A. Byrne, in his official capacity, illegally, without a search warrant or an order of court, and against the protest of the plaintiffs, entered their home in Los Angeles, and took from their possession the previously described property, saying with respect to the moving picture film formula, "This formula is a medical formula. It will develop valuable evidence to show that you have been practicing medicine without a license." It is also

alleged that the property in question was never used as evidence in any proceeding and that the defendants have failed to return it to plaintiffs, who, at all times mentioned in the complaint were, and now are the owners thereof; that "by reason of said Byrne . . . keeping said notes, . . . the same have become outlawed, and plaintiffs have thereby suffered the loss of the payment of the same"; that plaintiffs sustained a loss of $200,000 a month from December 1, 1928, on account of being deprived of possession of the moving picture film formula. Finally it is alleged demand was made October 18, 1935, upon the officer William A. Byrne, as agent of the board for return of the property, with which they failed to comply. Judgment for recovery of possession of the property is demanded, and upon failure to do so the complaint prays for damages for the value of the promissory notes and accrued interest, the Liberty Bonds and accrued interest, the mining stock, royalties in the amount of $200,000 a month from December 1, 1928, alleged to have been lost by being deprived of possession of the formula, together with costs and counsel fees. Clearly the defendants are sued in their official capacity only, and not as individuals.

We are of the opinion the general and special demurrer to the second amended complaint was properly sustained for the reason that the pleading is uncertain and defective in several respects, and because it fails to state facts sufficient to constitute a cause of action on a theory of either replevin or conversion.

The appellants may not complain of an abuse of discretion on the part of the trial court in failing to permit the filing of another amended pleading since no request to do so was made. That privilege was therefore waived. (*Powell* v. *Lampton,* 30 Cal. App. (2d) 43 [85 Pac. (2d) 495].)

The complaint fails to state a cause of action. The transaction complained of is surrounded with mystery and uncertainty. The defendants are charged, as public officers, with unlawfully searching a private residence and seizing valuable personal property without a warrant. There is no allegation that a complaint was ever filed against the plaintiffs by the State Board of Medical Examiners charging plaintiffs or either of them with a violation of any provision of the Medical Act, or that they threatened to do so. There is no allegation that the defendants ever accused the plaintiffs or

either of them with practicing medicine without a license, or with any other violation of the Medical Act. There is no allegation that the special officer, Byrne, was directed by the board to search the residence of plaintiffs or to seize the property in question. There is no allegation of any statement made by Byrne or by any member of the board that any of the property seized would be held or used by the board as evidence in an action pending or to be brought against the plaintiffs. The only statement in the complaint, in that regard, is that Mr. Byrne said concerning the formula: "It will develop valuable evidence to show that you have been practicing medicine without a license." No excuse for taking or retaining the bonds, notes or stock is alleged. It seems preposterous to assume that the Liberty Bonds, the promissory notes, the mining stock or the formula for producing moving picture films would or could have any bearing on a possible charge of violating the Medical Act. If that property was seized as alleged, it was unlawfully done without color of official right. There is no allegation as to when the promissory notes matured, or why suit was not or could not have been brought upon them before they became outlawed. There is no specific allegation that plaintiffs had a contract for royalties on the formula for moving picture films, or how they could have earned royalties thereon if they had possessed the formula. It is merely stated, as a speculative conclusion that they "could have received royalties amounting to Two Hundred Thousand Dollars ($200,000) a month" if they had had possession of the formula. The means of earning that alleged sum is uncertain, prospective and visionary. It is alleged that a demand for the return of the property was not made until October 18, 1935, which is more than seven years after it was seized. Four years have elapsed since the complaint was filed. The unwarranted delay, peculiar circumstances and uncertainties of the allegations of the complaint indicate there is no merit in this action.

The defendants are sued in their official capacity. The members of the State Board of Medical Examiners are public officers. The special officer, Byrne, was a public peace officer. (Sec. 817, Pen. Code.) Since it is alleged that William Byrne is a mere subordinate officer of the board and that he illegally seized and retained the property without specific direction or the cooperation of the members of the board,

they are not liable for his tort. (*Hilton* v. *Oliver,* 204 Cal. 535 [269 Pac. 425, 61 A. L. R. 297]; *Michel* v. *Smith,* 188 Cal. 199 [205 Pac. 113]; 102 A. L. R. 174, note.) The allegation that Byrne acted "in his official capacity and under color of his office", is a mere conclusion of law. (*Purdy* v. *Pacific Surety Co.,* 50 Colo. 273 [109 Pac. 961, Ann. Cas. 1912C, 577]; *Clement* v. *Dunn,* 114 Cal. App. 60 [299 Pac. 545].) In the present case it is affirmatively alleged that Byrne acted illegally without a warrant. Under such circumstances the members of the board are not liable for the tort of a subordinate officer, for the reason that the doctrine of *respondeat superior* does not apply. In *Michel* v. *Smith, supra,* a judgment for damages for false imprisonment against a chief of police and a sergeant, together with two subordinate officers, was reversed on the ground that the doctrine of *respondeat superior* did not apply so as to render the chief and sergeant of the police department liable for the tort of inferior officers, since the superior officers did not direct or participate in the illegal arrest. The syllabus correctly states the law of that case as follows:

"A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally cooperated therein."

In the case of *Hilton* v. *Oliver, supra,* a judgment against the trustees of a reclamation district for damages for the tort of subordinate officers was reversed for the same reason assigned in the Michel case. The court said in that regard:

"The defendant trustees can be held liable under the facts shown herein only by reason of the application of the doctrine of *respondeat superior.* This doctrine has no application as between a public officer and his subordinates who are likewise in the public service, unless the public officer has directed or countenanced the tortious acts to be done or has cooperated therein."

Clearly the demurrer was properly sustained as to Mr. Molony and the members of the board. We are of the opinion it was also properly sustained as to Mr. Byrne *in the capacity of a special officer of that board.* Assuming that Mr. Byrne would be *personally* liable for wrongfully seizing and retaining the plaintiffs' property in the illegal manner

described in the complaint, the pleading is fatally defective in failing to sue him as an individual. No judgment against Byrne or any other named defendant, in his individual capacity, is sought. The language of the complaint leaves no doubt that the defendants are each charged *in his official capacity*, only, with the tort of illegally seizing and retaining the property in question. The defendants, as individuals, are not parties to the suit. ▮ The character in which one is made a party to a suit must be determined from the allegations of the pleading. (47 C. J. 176, sec. 327.) It is essential that a pleading shall specifically show whether a suit against a public officer for negligence or misconduct is brought in his individual and private capacity or as an officer. (*Van Cleave* v. *Bucher,* 79 Cal. 600 [21 Pac. 954].) In the case last cited it was held a demurrer to the complaint was properly overruled since the pleading clearly charged the defendant with a tort in his official capacity. Ordinarily a complaint against one in his official or representative capacity will not support a judgment against him in his individual capacity. The distinction is apparent.

▮ Under the pleading in this case the action is barred by the statute of limitations. (Sec. 338, Code Civ. Proc.; *Benoist* v. *Benoist,* 178 Cal. 234 [172 Pac. 1109]; *San Francisco Credit Clearing House* v. *Wells,* 196 Cal. 701 [239 Pac. 319]; 5 Cal. Jur. 172, sec. 11; 24 Cal. Jur. 1036, sec. 14.) In an action for claim and delivery of personal property or in a suit of trover for the conversion of property, the statute of limitations runs from the time of the wrongful taking of possession or the illegal exercise of dominion over the property. (Sec. 338, subd. 3, Code Civ. Proc.) In the present case it is alleged the property was illegally seized without a warrant in September, 1928, and that demand for the possession thereof was not made by plaintiffs for over seven years. It is only when personal property is legally taken that the statute of limitations is tolled until the owner demands and is refused possession of it. (24 Cal. Jur. 1036, sec. 14.)

▮ The allegation that the plaintiffs "could have received royalties amounting to Two Hundred Thousand Dollars ($200,000) a month" from the formula for the production of moving picture films is too remote, uncertain and speculative, upon which to base a valid claim for such special damages. The facts upon which special damages for prospec-

tive earnings depend must be particularly stated in a pleading. (*Shaw* v. *Southern Pac. Ry. Co.*, 157 Cal. 240 [107 Pac. 108] ; 8 Cal. Jur. 889, sec. 127.)

The demurrer was properly sustained. The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.