65 Cal.App.2d Supp. 832 (1944)
R. W. BOLAND, Respondent,
v.
W. J. CECIL, as Director of Agriculture, etc., et al., Appellants.
California Court of Appeals. 
July 27, 1944.
 Robert W. Kenny, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Appellants.
 Lewis D. Collings and Amos Friedman for Respondent.
 KINCAID, J. pro tem.
 For some three years prior to April 3, 1943, plaintiff lived on and owned real property in El Monte, California, consisting of approximately one-half acre. He kept various kinds of livestock thereon. On April 2, 1943, he slaughtered a cow on said premises. He was not a licensed slaughterer (Agr. Code, 346-347), and the animal [65 Cal.App.2d Supp. 835] was not slaughtered under "inspection" (Agr. Code, 305), as is required in counties having over 28,000 population, as does Los Angeles County. Nor did that part of the meat from said cow which plaintiff had in his "possession for sale ... bear the 'Inspected and passed' stamp of ..." inspection ( 305). It was seized on April 3, 1943, by officials of the Department of Agriculture, who claimed to be acting under the provisions of section 311.1, Agricultural Code, and the meat was and now is stored in a freezing locker. The defendant Webb, against whom default judgment was taken and who is not a party to this appeal, operates said locker.
 Plaintiff contended, and the trial court found from the evidence, that the meat from the animal so slaughtered was intended by plaintiff to be consumed by himself and family, and that excess portions thereof not so consumed were intended by him to be disposed of to persons in his locality, pursuant to the provisions of sections 307 and 356, Agricultural Code; that, at the time of such seizure, no part of such meat had been sold or delivered to any third person, and, while no tags or sales memoranda had been affixed thereto, the plaintiff intended to affix same to such portions of the meat as might be disposed of by him in his locality.
 Plaintiff takes the position, and the trial court seems to have held with him, that he was privileged to slaughter the said cow under the circumstances and conditions above set forth, pursuant to the exceptions contained in the said sections 307 and 356, and that his case falls within the provisions of both said sections. The pertinent parts of section 307 are as follows: "Nothing in this article restricts or prohibits: (a) [Slaughter by live stock producer.] A live stock producer from slaughtering animals on his own premises that are a part of his own herd for his own consumption or from disposing of the carcasses and products of those animals thus slaughtered; provided, they can be identified as such, and are sound, healthful, wholesome, and fit for human food, and are disposed of in his locality; when cattle, sheep, swine or goats are sold by said producer in the vicinity where produced and slaughtered there shall be attached to said meat or meat products a statement giving substantially the following: [Certificate.] I hereby certify that the uninspected meat (or meat products as the case may be) to which this certificate is attached is from animals slaughtered by the undersigned, a farmer, on his farm, and that at this date it is sound, healthful, whole-some, [65 Cal.App.2d Supp. 836] and fit for human food." Section 356 reads: "Any owner of property, or a ranchman located on a definite property as a tenant, lessee or purchaser under contract, may slaughter cattle in small numbers on said premises for his own consumption, and may sell or give away a portion of the meat thereof except to a peddler, retailer, hotel, restaurant, or any person offering the same for public consumption. When such person sells the meat thereof, he shall give to the buyer, and the buyer shall receive, a sales tag or sales memorandum, showing the names of the seller and buyer, the date of sale and the quantity sold. The buyer shall retain said tag or memorandum for ninety days, and exhibit it upon request of any agent of the department or any peace officer."
 A casual reading of these sections might well lead to the belief that they are practically similar, and are exceptions to the same code requirements, with section 356 being so much broader as to render section 307 useless. A more careful study of them reveals marked dissimilarities, and that they do not necessarily conflict.
 Section 307 is contained in article 1 of division 3, chapter 1, of the Agricultural Code, and deals exclusively with the subject of "meat inspection" of slaughtered animals. It constitutes an exception to the necessity of compliance with the inspection of meat laws as in said article 1 otherwise provided. Section 356 is contained in article 3, of said division and chapter, and, while said article is entitled "Marks and Brands," its contents are not limited to that subject, as certain provisions thereof deal with the matter of the licensing and regulating of slaughtering of animals. Section 346 requires a license to slaughter a bovine animal, and section 356 is an exception to such slaughtering license requirement. The evidence supports the court's finding that plaintiff has brought himself within the provisions of section 356.
 Even though one who is a resident of a county of over 28,000 in population complies in every particular with section 356, thus bringing himself within the exemption from the requirement of having a slaughtering license, he, nevertheless, would violate the provisions of article 1, requiring an inspection of the meat, unless he is a "live stock producer." Only the latter are exempted from inspection regulations under section 307, and the plaintiff can claim the benefit thereof only if the evidence in the case supports the court's [65 Cal.App.2d Supp. 837] finding that he is a livestock producer, and that his case is otherwise within section 307.
 [1] "Livestock" is defined by Webster's New International Dictionary, second edition, as "Domestic animals used or raised on a farm, especially those kept for profit." "Producer" is defined as "One who produces, brings forth, or generates." Section 307 does not limit itself to cattle as does section 356, but includes all animals that are a part of the livestock producer's own herd. Viewing the evidence, as we must, most favorably in support of the finding that plaintiff is a livestock producer, the record discloses that plaintiff had, for several years prior to April 2, 1943, been raising chickens, rabbits, pigs, sheep, ducks and cattle on his premises. On April 2, 1943, in addition to other types of animals and fowls, he had on said premises twelve head of cattle, including two calves and seven heifers; that, while two calves had been born on his place, he bought many day-old calves and raised them there. The defendant Greenan testified that on April 3, 1943, the occasion of his first visit to plaintiff's place, he saw thereon a milk cow, a number of calves, five or more heifers, pigs, a sheep, and a horse. From the foregoing, even though other conflicting evidence was before the court, we cannot say that there was not sufficient evidence upon which the trial judge could properly base a finding that plaintiff was a livestock producer.
 [2] Another prerequisite to the application of the exemption from inspection regulations under section 307 is that the animals so slaughtered by the producer on his own premises "are a part of his own heard." Therefore, the plaintiff herein can claim the benefit of such section only in the event the evidence in the case supports the court's finding that the cow in question was a part of his own herd at the time it was killed. "Herd" is defined as "A number of beasts assembled together; ... more than a few, of cattle, sheep, horses or other animals of the larger sorts, assembled and kept together as one drove and under one care and management." (39 C.J.S. 891.) To become a part of one's own herd, then, would only require that the animal be owned by the herd owner and be mingled and kept with the other animals in one drove and under individual care and management. As a general proposition, it would seem that, in order to become a part of a herd, no particular period of time must elapse before an animal can be considered as included in such herd. Nor is it necessary, in [65 Cal.App.2d Supp. 838] order to be so included, that the animal be either born on the producer's premises or kept there any particular length of time.
 When construed, however, with the exemption from inspection provisions of section 307, the Legislature must have intended that the phrase "a part of his own herd" be given a more strict construction in consonance with its efforts to protect public health. The very purpose of requiring the inspection of meat prior to its disposition is to protect public health. The exception in favor of a producer, wherein under certain conditions he may, in lieu of such inspection, substitute his own certificate as to the healthfulness and wholesomeness of such meat slaughtered by him, was not intended by the Legislature as a means of weakening this protection to the public. As an exception to the general statutory requirement, it must be strictly construed. (Merchants Nat. Bank v. Continental Nat. Bank (1929), 98 Cal.App. 523, 533 [277 P. 354]; In re Goddard (1937), 24 Cal.App.2d 132, 140 [74 P.2d 818]; Spokane & I.E.R. Co. v. United States (1915), 241 U.S. 344 [36 S.Ct. 668, 60 L.Ed. 1037, 1041].) The experience of the producer and his personal knowledge of the animals making up his herd were expected to place him in a position wherein he would know, and could truthfully and safely certify that the animal so slaughtered by him was in fact healthy and its meat fit for human consumption. In order for such producer to gain a personal knowledge of a particular animal whereby he could safely certify it under the foregoing provisions, such animal must have been in his possession, and subject to his observation for at least a reasonable period of time. Only then could such animal be deemed to have become a part of his herd under said section 307. If this were not the case, the owner of a herd could buy an animal, mingle it with such herd for one day, slaughter it, and then sell most of it to others. Those who received it would be almost entirely lacking in protection from its possible unwholesomeness. We cannot assume that the Legislature intended any such relaxation of the meat inspection laws as would thus take place.
 [3] As to what is such a reasonable period of time during which such animal must have been in the producer's possession and subject to his observation is a question of fact to be determined by all of the surrounding circumstances. The length of such period would vary with changing conditions. [65 Cal.App.2d Supp. 839] The experience of the producer, his constant or infrequent inspections, the number of animals making up his herd, and the age and kind of such animals are elements to be considered in arriving at such a determination.
 [4] By its express finding that the cow in question was a part of the producer's own herd at the time it was killed, and that it was slaughtered in compliance with section 307, the trial court must be deemed to have considered this question of fact and to have resolved the same in favor of plaintiff. Viewing the evidence most favorably in support of such finding, the record discloses that such cow had been purchased by plaintiff from Dolan's Dairy thirty-five days before she was slaughtered; that for the first 30 days of such period he had kept the cow on the premises of Dolan's Dairy and he brought her to his place five days before April 2, 1943, the date when she was killed; that he visited her twice a day for the purpose of feeding her during such thirty-day period, and fed her at his place during the remaining five days. He established her age to be between seven and nine years, and he bought her for a milk cow, believing her to be carrying a calf. He decided to slaughter her for meat when he found she was barren of calf. He knew that she came from and had been a part of a dairy herd of Dolan's Dairy and that such herd was regularly inspected under the state laws requiring periodical tuberculosis tests; that such cow had been a part of Dolan's herd for almost a year prior to her purchase by plaintiff; that plaintiff had been attending his herd on his premises for some two years; that he knew flukes, tapeworms, parasites and cysts when he saw them and knew when an animal was healthy or unhealthy. This evidence is sufficient to support the inferential finding that the cow in question had been in the producer's possession and subject to his observation for a sufficient length of time, and that his experience was such as to enable him to ascertain that the animal was healthy and that it could be properly slaughtered under the provisions of section 307 without endangering public health. Such a cow would be deemed to be "produced" by the producer for the purposes of section 307 without requiring her to have been born to his ownership or to have been raised or fattened by him for any particular or definite time.
 [5] Whenever an officer seizes property unlawfully, even though under color of his office, an action for damages may be [65 Cal.App.2d Supp. 840] maintained against him, and if acting in behalf of a principal, also against the principal, the same as though the damages were inflicted by private individuals. (Silva v. MacAuley (1933), 135 Cal.App. 249, 257 [26 P.2d 887, 27 P.2d 791].) In the within case, there is some question as to whether the complaint charges the defendants, or the judgment is against them, in their official capacity or in their individual capacity, or both. The title to the complaint names as defendants "W. J. Cecil, Director of Agriculture of the State of California, Dr. E. B. Foster, John G. Greenan, Leslie L. Webb" and "Does." In the body of the complaint is found: "That the defendant, W. J. Cecil, is the Director of Agriculture of the State of California. That the defendant, Dr. E. B. Foster, is Meat Inspector of the Division of Animal Industry of the Department of Agriculture of the State of California. That the defendant, John G. Greenan, is Assistant Meat Inspector of the Division of Animal Industry of the Department of Agriculture of the State of California." The judgment decrees that plaintiff recover of and from the defendants, "W. J. Cecil, Director of Agriculture of the State of California, Dr. E. B. Foster, Supervising Veterinary Meat Inspector of the Department of Agriculture of the State of California, John G. Greenan, Assistant Meat Inspector of the Department of Agriculture of the State of California, and Leslie L. Webb and each of them, possession of the following described property, to-wit, six hundred eighty-five pounds (685#) of beef; and in case possession of said property cannot be had, then its value, which is fixed at the sum of Three Hundred Forty-three ($343.00) Dollars, and in either case the sum of Sixty-one and 85/100 ($61.85) Dollars as damages for its detention, together with his costs herein incurred in the sum of $95.25."
 [6] "Where it is doubtful in what capacity a party sues or is sued, reference may be had to the entire complaint." (47 C.J. 176; Henry v. Willett (1922), 60 Cal.App. 244 [212 P. 698].) While the title to the complaint names the official title of only the defendant Cecil, the language of such pleading itself leaves no doubt that the defendants are each charged in his official capacity only with the tort of illegally seizing and retaining the property in question. The defendants, as individuals, are not parties to the suit (Reed v. Molony (1940), 38 Cal.App.2d 405, 411 [101 P.2d 175]), and the judgment [65 Cal.App.2d Supp. 841] is against them only in their official capacity and not individually.
 [7] The principle is fundamental that the state may not be sued without its consent. (23 Cal.Jur. 578; 59 C.J. 307.) While the general rule that a state cannot be sued without its consent cannot be evaded by the instituting of an action against state officials or agencies when the real claim is against the state itself, for such "rule to apply the relief asked must involve some direct or substantial interest of the state, as a distinct entity, apart from the mere interest a state may have in the welfare of its citizens or the vindication of its laws." (59 C.J. 308.) The relief here sought, at least to the extent of demanding the return of plaintiff's meat which was wrongfully taken by the defendant state officials, acting in their official capacity, is not such as to "involve some direct or substantial interest of the state." As was said in the case of Louisville & N.R. Co. v. Bosworth, 209 F. 380, 401, 402, and referred to in 59 C.J. 308, section 78(a): "The fact that a state will be affected by a suit against state officers is not a consideration against the maintainability of the suit ... the better test ... is to be found in a consideration of the relief sought therein. If the relief sought is relief against the state, it is not maintainable. ... If, however, the sole relief sought is relief against the state officers, it is maintainable. Such it is if it seeks ... recovery of possession of property wrongfully withheld. ..."
 Insofar as the plaintiff's suit seeks to recover from the state officers the possession of his wrongfully-taken and withheld meat, the action is maintainable. [8] Having elected to sue the defendant state officers in their official capacity only, and not in their individual capacity, plaintiff is limited in his possible recovery herein to a judgment for possession of the meat. The alternative judgment for the value thereof, and for damages for its detention, cannot be upheld. This is not a case in which liability can attach to the state for such monetary judgment. Under the judgment rendered, no execution for the value or for damages for the detention could issue or be levied against the defendants in their individual capacity. Any such levy would of necessity be directed against the state treasury.
 [9] It would be error to award court costs against the state in the absence of an express statutory enactment authorizing [65 Cal.App.2d Supp. 842] the same. (People v. One Plymouth (1937), 21 Cal.App.2d 715 [69 P.2d 1011]; People v. One 1937 Plymouth (1940), 40 Cal.App.2d 38 [104 P.2d 372]; Connecticut Gen'l Life Ins. Co. v. State (1941), 47 Cal.App.2d 88 [117 P.2d 377].) [10] The Legislature made such an enactment in 1943 allowing costs against the state, when it is a party, on the same basis as any other party, with the proviso that when so awarded they shall be paid out of the appropriation for the support of the agency on whose behalf the state appeared. (Code Civ. Proc., 1028.) Since we are holding, in effect, that this is a suit against the state, such statute is here applicable.
 [11] Whether or not the plaintiff was raising or producing livestock on his premises, in violation of a county zoning ordinance, was immaterial to the issues presented. The trial court properly sustained an objection to the offer of proof of such evidence.
 The judgment is modified by striking out "and in case possession of said property cannot be had, then its value, which is fixed at the sum of Three Hundred Forty-three ($343.00) Dollars, and in either case the sum of Sixty-One and 85/100 ($61.85) Dollars as damages for its detention," and as so modified, the judgment is affirmed. Neither side to recover costs on appeal.
 Fox, J., concurred.
 SHAW, P. J.
 I dissent. I concur in all the foregoing opinion except its holding that the cow in question was a part of plaintiff's "own herd." I think some further limitation should be put upon the meaning of the phrase "a part of his own herd," as used in section 307 of the Agricultural Code. If it requires merely the presence of the animal on the producer's premises and under his observation for a reasonable time to become familiar with it, the finding that such a time had elapsed in this case when the cow was slaughtered is probably supported by the evidence. But on reading section 307 with its evident purpose to protect the public in mind, and looking for some more definite statement in explanation of the term "his own herd," I find that only a "live stock producer" is entitled to the exemption from inspection provided by subdivision (a). It is reasonable to suppose that such producer is related to "his own herd" as a producer, [65 Cal.App.2d Supp. 843] and not otherwise. Carrying out this idea is the provision later in subdivision (a) that "when cattle, sheep, swine or goats are sold by said producer in the vicinity where produced and slaughtered there shall be attached to said meat or meat products a statement" certifying that they are wholesome. Since this statement is the only assurance the purchaser has of the quality of the meat sold under subdivision (a) of section 307, and there is no limitation upon the quantity or proportion of any individual animal slaughtered by the producer "for his own consumption" that he may sell, this provision for a statement must be intended as a limitation on the right to sell and it is to be construed as a part of the proviso appearing in this subdivision. That proviso permits the producer to dispose of his excess meat only "in his locality"; and in view of the whole framework of the section I conclude that the phrase "in the vicinity where produced and slaughtered" is intended to be a restatement of the same idea in other words, so that the right of sale may be exercised only in the vicinity where the animals are produced, which must also be the locality of the producer. Subdivision (a) of section 307 is not well drawn, and legislative attention might well be turned to its improvement; but taking it as it is, and attempting to make a consistent and reasonable construction of its various provisions I cannot believe that it was intended to sanction what plaintiff appears to have done. It appears to me that, on a proper construction of the statute, a livestock producer may sell, under subdivision (a) of section 307, only cattle which he has produced, and that the cow in question here was not produced by plaintiff.