297 P.2d 866

In the Matter of the Last WILL and Testament of Arthur S. HICKOK, Deceased.

TOLEDO SOCIETY FOR CRIPPLED CHILDREN, Riverside Hospital, Mercy Hospital, Toledo Community Chest, Toledo Chapter American Red Cross, Toledo Hospital, Starr Commonwealth for Boys, Toledo Society for the Blind, Little Sisters of the Poor, Toledo District Nurse Association, Toledo Public Health Association, Lutheran's Orphanage & Old Folks' Home, Boy's Republic, Trinity English Evangelical Lutheran Church, Jewish Federation, Old Ladies' Home of Toledo (a/k/a Old Folks' Home of Toledo), Adams Street Mission & Day Nursery, Madison Baptist Church, School Board of Madison, Ohio, Movants-Appellants,

v.

TOLEDO TRUST COMPANY, a corporation, Walter G. Kirkbride, Carl F. Eisenhour, and Clarence H. Hickok, Executors of the Last Will and Testament of Arthur S. Hickok, Deceased, and Ruth Hickok Marvin, Respondents-Appellees.

No. 6012.

Supreme Court of New Mexico.

March 12, 1956.

Rehearing Denied May 25, 1956.

Hervey, Dow & Hinkle, W. E. Bondurant, Jr., S. B. Christy, IV, Roswell, for appellants.

Gilbert, White & Gilbert, Santa Fe, for Ruth Hickok Marvin.

Noble & Noble, Las Vegas, for executors.

McGHEE, Justice.

The appellants are nineteen of twenty named charities for whom provision was made under testamentary trust provisions in the will of Arthur S. Hickok, deceased, who died in 1945. These charities appeal from the denial of their motion in the court below, the District Court of Lincoln County, to set aside its final decree in ancillary probate proceedings upon the estate of said decedent, who at the time of his death was a resident of and domiciled in Ohio.

The basis for said motion was that the charities were "devised a remainder interest" in the properties of Hickok situated in this state; that although the charities were "devisees" under the will, they were not served with notice as to the pendency of the estate in New Mexico nor of the hearing upon the final account and report of the executors; that the final decree is void as to the charities and should be vacated.

The appellees are the executors and Ruth Hickok Marvin, decedent's daughter.

Appellants have raised three points on this appeal: (1) That the statute purporting to vest in the district courts of this state jurisdiction concurrent with that of the probate courts over the administration of estates, § 16-3-20, NMSA, 1953 is unconstitutional; (a point raised first in this Court) (2) That the final decree is void as to them because they were not served with notice of hearing upon the final account and report; (3) That the trial court erred in not admitting in evidence an exhibit said to contain admissions by some of the executors that they still held certain stock which was an asset of the corpus of the trust estate established by the will of decedent, and which exhibit is further said to have a bearing upon the issue of laches on the part of appellants asserted by appellees in the lower court.

Before proceeding to the merits of the issues raised, we must reckon with established juristic principles. It is certain that this Court does not sit to decide abstract questions. Valencia Water Co. v. Neilson, 1920, 27 N.M. 29, 192 P. 510; Hatch v. Keehan, 61 N.M. 1, 293 P.2d 314. Further, we have held time and again we would not "sit in judgment upon the action of the legislative branch of the government, except when the question is presented by a litigant claiming to be adversely affected by the legislative act on the particular ground complained of." Asplund v. Alarid, 1923, 29 N.M. 129, 219 P. 786, 790.

Upon the basis of these rules and our holding in In re Santillanes, 1943, 47 N.M. 140, 138 P.2d 503, considered hereafter, it is urged by appellees that appellants have

no standing to question the validity of § 16–3–20, supra, on constitutional grounds.

Appellants counter with argument they do have standing to challenge the constitutional validity of such section because of their assertion the final account and report shows certain burdens were saddled on the New Mexico property of decedent and appellants, owning or claiming an interest therein, should be apprised of such burdens.

The final account and report is complained of in these respects. First, complaint is made that the final account of the executors states that all expenses have been paid, i. e., filing fees, publication costs, appraiser's and attorney's fees, but the report does not state who paid the expenses, the amounts so expended or what portion of expenses was chargeable to the New Mexico properties. In this connection appellants point to the fact that although the final account states that no claims were filed against the estate, a later paragraph therein alleges that all claims have been paid. Also, appellants argue that since $379,629.39 was allowed for deductions on the state succession tax that it is reasonable to assume that some portion of this sum represents expenses and claims pertaining to the New Mexico probate and that they should be advised of the necessity for and the amount of such expenses.

It is next argued that no income is listed in the final account, although part of the property owned by decedent in New Mexico was a ranch, presumably operated during the two years while the estate was in probate.

Lastly, appellants point to the fact that the account and report states that the executors have conveyed the New Mexico properties but it is not stated to whom conveyance was made, for how much, or what happened to the purchase money.

Upon examination of the interests claimed by appellants under decedent's will, we must agree with appellees that the matters complained about by appellants respecting the final account and report resulted in no detriment to them.

Under the will the corpus of the Hickok estate, excepting certain specific bequests, is left to designated trustees. For twenty years the trustees are to divide the net income between testator's daughter and son (his widow having elected not to take under the will) and a class of employees of the Hickok Oil Corporation of Ohio. At the expiration of such period the trustees are directed to divide the assets in their possession into five funds of varying specified percentages which shall be distributed to the charities.

The will further provides that until distribution is made of the corpus of the trust no beneficiary other than members of testator's family may assign or otherwise deal with any possible interest they may have; that if alienation be attempted or attachment levied upon such interest, the absolute right of the beneficiary to take shall

cease and terminate. The will directs that no charity shall take thereunder unless it can do so without creating inheritance or estate tax liability. It is noted in this connection that § 31–16–1, NMSA, 1953, provides that gifts to foreign charities are tax exempt only if the property so passed shall be used within this state and if the law of the state of the domicile of such charity grants reciprocal exemptions.

The trustees are given extensive powers of management over the trust estate, including the right to sell, pledge, or otherwise dispose of the trust assets, the right to invest and reinvest the proceeds, the right to determine whether money or property coming into their possession shall be treated as principal or income, and to compromise, arbitrate and adjust claims relating to the trust estate. They are also given power to make inventory and appraisal of the trust estate and to make distribution in kind when any distribution of the principal is made; their decision in such case shall be binding upon the beneficiaries.

The will recognized a contract entered into in 1937 between the testator and Harry Reynolds whereby it was provided for the incorporation of Hickok & Reynolds, Inc., an Ohio corporation, to which the assets of the partnership of Hickok and Reynolds would be transferred. The executors were directed by the will to join in a transfer of the partnership assets to the corporation in exchange for half of the stock therein.

The real estate which the decedent owned in New Mexico was held in partnership with Reynolds.

Reverting, then, to the matters in the final account and report to which appellants object, we note that the final account alleges that all expenses in connection with the New Mexico proceeding were paid by the executors and that resort to the real estate was unnecessary. This allegation is carried forward as a finding in the final decree and the fact stated that no charge of any kind exists against the estate. Since whatever interest the appellants have in the estate could only be asserted in our courts against the New Mexico realty, and since no resort to it for any payments was made and no charge placed thereon, we cannot see that there is any detriment to appellants on this score.

Because the appellants have no interest in the income from the trust properties under the express terms of the will, the failure of the executors to report income received from New Mexico properties, if any, does not work to their detriment either.

As to the matter of the conveyance of the New Mexico properties, it is not true that the final account and report does not state to whom the properties were conveyed. Paragraphs 12 and 13 thereof are as follows:

"That under the terms of Item XIV of the said Last Will and Testament of said Arthur S. Hickok, deceased, and pursuant to the agreements therein

mentioned, the undersigned Executors of the Last Will and Testament of Arthur S. Hickok, deceased, were obligated to convey, assign and transfer all of said real property to Hickok & Reynolds, Inc., a corporation organized under the laws of the State of Ohio.

"That pursuant to said direction contained in said will and said agreements, the undersigned Executors did convey all of the interest of said Arthur S. Hickok in and to the real estate above described to said corporation."

As this appeal is presented to us, it is neither contended nor suggested that the executors were not bound by the agreement between decedent and his partner and the recognition thereof in the will, or that appellants desire to attack the conveyance in any manner. Instead they indicate concern over what the purchase price was and what happened to it. The direction of the will was that these and other partnership properties be conveyed in exchange for one half of the stock of the corporate grantee. For purposes of the present determination, we believe the final account stating the conveyances were made pursuant to the direction of the will is supported by and referable to the will itself, with the conclusion the conveyances were made in exchange for the corporate stock.

The effort of appellants to have the final decree vacated is, however, not an academic exercise, for they stand to gain a tactical advantage of potentially great value by the re-opening of probate proceedings as they would then be enabled under § 31–2–5, NMSA, 1953, to obtain service of process upon the ancillary executors in New Mexico in an independent action brought here to determine the validity of the will as to the New Mexico properties.

Appellants would have a direct and real interest to be served thereby, for the Ohio supreme court has held the provisions in favor of the charities invalid under a statute so providing where the testator dies leaving issue of his body and his will contains devises or bequests to charitable institutions, unless the will was executed at least one year prior to his death, which period had not elapsed at the death of Arthur S. Hickok. Kirkbride v. Hickok, 1951, 155 Ohio St. 293, 98 N.E.2d 815. Following this decision the validity of the provisions for the charities was brought before the courts of Texas where they were upheld under the law of Texas as to real estate owned therein by the testator in partnership with Reynolds. It was further held that the doctrine of equitable conversion did not apply to the real estate which had been exchanged for corporate stock in Hickok & Reynolds, Inc., under provisions of the will and agreements already noted. Toledo Soc. for Crippled Children v. Hickok, 1953, 152 Tex. 578, 261 S.W.2d 692, 43 A.L.R.2d 553.

It is not asserted that the intention of appellants to avail themselves of the pro-

visions for service of process upon the executors in this state gives appellants standing to re-open the proceedings for want of jurisdiction, and, if the constitutional question were the sole issue raised by this appeal, we should, perhaps, refuse to consider it.

██ However, the question of jurisdiction over the subject matter of this proceeding seems to us to be peculiarly tied to the challenge made in appellants' second point that the final decree is void as to them for failure of service of notice of hearing upon the final account and report. If it be held, as appellees urge, that appellants are not entitled to such service and that their interests are to be represented in the proceedings by service upon their trustees, then we have grave doubt whether appellants have been accorded that representation in the proceedings to which they are entitled unless, in turn, it be determined the trustees themselves, as recipients of the legal interests under the will, were validly served. This doubt, like a boomerang, brings us unerringly back to the substantive jurisdictional question, for process issued without foundational jurisdiction over subject matter can have no validity whatever.

At this juncture, therefore, we consider appellants' second proposition under which it is contended they should be considered to be in the class of "heirs, legatees and devisees", and, as such, entitled to be served with notice of hearing on the final account and report under the provisions of § 31–12–7, NMSA, 1953. This section provides, in pertinent part:

"The notice of hearing above referred to [upon final account and report] * * * shall contain the title of the cause and be addressed to all of the heirs, legatees and devisees as shown in the report, or petition for appointment of the administrator or will, and to all unknown heirs of said decedent and all unknown persons claiming any lien upon or right, title or interest in, or to the estate of said decedent, * * *."

This rather lengthy section also provides "* * * Notice of hearing upon such final account and report shall be given in the same manner as now provided for the service of summons in civil actions; * * *."

Service of summons in civil actions is provided for in Rule 4, New Mexico Rules of Civil Procedure, § 21–1–1(4), NMSA, 1953, and constructive service without the state may be had either by personal service in such other state, or by publication and mailing. Mailing of notice was made to the trustees under the will and publication was addressed to them, although only in their individual names (of which no point is made), but no constructive service was attempted to be obtained upon any of the present appellants.

The argument of appellants is, in substance, (a) that they are remaindermen and

devisees upon the theory the trustees have only the duty of parcelling out the corpus of the trust estate to them at the expiration of twenty years, and, although designated as beneficiaries, their interest is really legal rather than equitable; or, (b) that although they are given only an equitable interest, nevertheless they should be considered to be in the class with "heirs, legatees and devisees" under the provisions of our statute for service of notice.

■ As to the first contention, it is generally held that where property is placed in trust for a term and the trustees at the expiration of the term are to divide the corpus among *contingent remaindermen,* the trust is an active one, in view of the evident purpose of the settlor to suspend the procurance by the remaindermen of the legal estate until the expiration of the term stated. 1A Bogert, Trusts and Trustees, § 207, pp. 288, 289.

■ It is held by a majority of courts that a trust is not executed where the trustee is directed by the will or trust instrument to convey the corpus to the beneficiaries; that the direction to convey makes the trust active. 1 Scott on Trusts, § 69.1, at pp. 416, 417. Certainly this must be true where the trustee is directed to divide the corpus into varying proportionate shares and the beneficiaries are not given any interest in specific property. and where their interests are contingent upon their being qualified to take when the time comes.

See 1A Bogert, Trusts and Trustees, § 206 (Trusts to Convey) p. 281, et seq.

■ In view of the contingent nature of the interests of appellants in the estate and the extensive powers of management given the trustees, it is inconceivable to regard the interests of appellants as those of legal remaindermen and not equitable beneficiaries.

■ As holders of contingent, equitable interests in the estate, is it prescribed by our statute that they shall be served with notice of the hearing upon the final account and report of the executors? We must answer the question in the negative upon the basis of these controlling considerations: (a) A probate proceeding is a special, statutory proceeding. In re Towndrow's Will, 1943, 47 N.M. 173, 138 P.2d 1001; In re Roeder's Estate, 1940, 44 N.M. 429, 103 P.2d 631. (b) We do not ascribe to our legislature any laxity of terminology in the use of the words "heirs, legatees and devisees" each of which has a precise, established meaning referring to legal estates, dating back to the beginnings of common-law terminology. Annotation 4 A.L.R. 246; Desloge v. Tucker, 1906, 196 Mo. 587, 94 S.W. 283; In re Lewis' Estate, 1916, 39 Nev. 445, 159 P. 961, 4 A.L.R. 241; Pratt v. McGhee, 1882, 17 S.C. 428. (c) Elsewhere in our statutes governing probate procedure provision is made that at any time after the issuance of letters testamentary any person interested in the estate, whether as heir, devisee, legatee,

creditor, *beneficiary under a trust,* or otherwise, may serve upon the executor and file with the clerk of the court wherein the administration is pending a written request stating he desires notice of the filing of any or all petitions involving the administration of the estate, or the proposed allowance of accounts or approval of reports, etc., and thereafter such persons shall be entitled to be given five days' written notice of all contemplated proceedings or orders therein. § 31–5–2, NMSA, 1953. (d) The beneficiaries of a trust take through it and their interests are in law generally protected, served and represented by the trustee, the holder of the legal estate. 2 Scott on Trusts, § 280; 3 Bogert, Trusts and Trustees, § 593.

Appellants rely chiefly on the California case of In re Loring's Estate, 1946, 29 Cal.2d 423, 175 P.2d 524, which would appear to direct a result different from that which we announce. However, the probate courts of that state are given general equitable jurisdiction over the administration of testamentary trusts. In re White's Estate, 1945, 69 Cal.App.2d 749, 160 P.2d 204; Luscomb v. Fintzelberg, 1912, 162 Cal. 433, 123 P. 247. It is not even contended that the probate courts of this state have such jurisdiction.

Thus are we confronted with the doubt suggested above, whether appellants enjoyed in the probate proceedings the representation to which they were entitled, for, although they be not entitled to service of notice of the hearing upon the final account and report, this does not mean they are to be given no part in the proceedings whatever. This is apparent from the fact that the statute specifically provides they may request notice, and we believe they are entitled to urge that their trustees be served with notice by a court of competent and valid jurisdiction.

In In re Santillanes, supra, we declined to consider an attack upon the constitutionality of the Juvenile Court Act. The grounds of the attack were (1) that the judge of said court was necessarily a county officer and hence must be a resident of the county in compliance with art. V, § 13, of the Constitution of New Mexico, a condition the district judge serving in an ex-officio capacity in three counties could not fulfill save as to one county thereof; and (2) that the act collided with another constitutional barrier in that the judge selected by it enjoys a six-year term, whereas being a county officer as judge of a county court he was limited to two successive terms of two years each by art. X, § 2 of our Constitution. In that case it is said [47 N.M. 140, 138 P.2d 509]:

"There are thus presented for consideration and decision separate challenges to the existence of the juvenile court itself which, if either be of the effect claimed, will result in a declaration of nullity, all because of the ineligibility of the judge selected to preside over it. And the challenges come,·

not in a direct proceeding by the state to test, on the grounds urged, the judges' right to sit, but rather from a *private suitor* in a *collateral proceeding* having for its *primary* aim his discharge from a claimed illegal detention, the declaration of nullity to be merely an incidental means of accomplishing the primary end sought."

In a following paragraph, and after citing a number of cases, it is said:

"* * * Suffice it to say, these cases plainly hold it to be the prerogative of the state alone, moving in its sovereign capacity, not that of the private suitor, to initiate and conduct to judgment proceedings fraught with such fateful and weighty consequences as, in the case at bar, for instance, would attend a declaration that a court which has functioned for nearly a quarter of a century, never had any existence at all."

We are of opinion that our holding in the Santillanes case related to both facts and contentions distinguishable from those presently before us. It is apparent from the language of that opinion already quoted, and from the cases relied upon, State v. Blancett, 1918, 24 N.M. 433, 174 P. 207; City of Albuquerque v. Water Supply Co., 1918, 24 N.M. 368, 174 P. 217, 5 A.L.R. 519; and Ackerman v. Baird, 1938, 42 N.M. 233, 76 P.2d 947, that the decision turned upon the rule respecting the manner in which status of an officer

may be questioned. We do not believe the language of the decision should or can be so stretched as to foreclose a determination by this Court of the substantive jurisdiction of the court below. We therefore proceed to a determination of the constitutional question raised respecting the validity of § 16–3–20, NMSA, 1953.

The will of Arthur S. Hickok, deceased, was admitted to probate August 13, 1945; the final decree was entered in the probate proceedings November 24, 1947. Consequently, we are concerned with the problem of probate jurisdiction during those years and prior to the constitutional amendment of art. VI, § 23, of September 20, 1949, in which the principal change was to declare the probate courts have jurisdiction to determine heirship with respect to real property. Prior to this amendment the section read:

"A probate court is hereby established for each county, which shall be a court of record, and, until otherwise provided by law, shall have the same jurisdiction as is now exercised by the probate courts of the Territory of New Mexico. The legislature shall have power from time to time to confer upon the probate court in any county in this state, general civil jurisdiction coextensive with the county; provided, however, that such court shall not have jurisdiction in civil causes in which the matter in controversy shall exceed in value one thousand

dollars, exclusive of interest; nor in any action for malicious prosecution, divorce and alimony, slander and libel; nor in any action against officers for misconduct in office; nor in any action for the specific performance of contracts for the sale of real estate; nor in any action for the possession of land; nor in any matter wherein the title or boundaries of land may be in dispute or drawn in question; nor to grant writs of injunction, habeas corpus or extraordinary writs. Jurisdiction may be conferred upon the judges of said court to act as examining and committing magistrates in criminal cases, and upon said courts for the trial of misdemeanors in which the punishment can not be imprisonment in the penitentiary, or in which the fine can not be in excess of one thousand dollars. A jury for the trial of such cases shall consist of six men.

"Any civil or criminal case pending in the probate court, in which the probate judge is disqualified, shall be transferred to the district court of the same county for trial."

Our territorial probate courts had the jurisdiction pronounced in § 21 of the Kearny Code, Courts and Judicial Powers. It was originally provided thereby: "The several prefects shall have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments; the granting letters testamentary and of administration, * * *" Then followed a lengthy enumeration of specific matters included within such jurisdiction not necessary to be detailed here. The section has been many times amended, but the provision as to "exclusive original jurisdiction" has been carried forward in our laws each time. A comprehensive discussion of the history of the section in territorial and later days is to be found in First Nat. Bank of Albuquerque v. Dunbar, 1927, 32 N.M. 419, 422, 258 P. 817. The section today, § 16–4–10, NMSA, 1953, provides in such regard: "The probate courts shall have exclusive original jurisdiction in all the following cases, to-wit: The probate of last wills and testaments, the granting of letters testamentary and of administration * * *" etc.

So matters stood when Ch. 104, § 1, Laws of 1941 was enacted providing:

"In addition to their existing jurisdiction the District Courts of this State shall have concurrent jurisdiction with the Probate Courts in each county within their respective districts as to all matters heretofore within the exclusive jurisdiction of said Probate Courts."

By Ch. 96, § 1, Laws of 1949, a paragraph was included in such section providing the district courts should have power to determine heirship in any probate or administration proceeding. As amended this enactment now appears as § 16–3–20, NMSA, 1953, the constitutionality of which is questioned by appellants.

It is the specific contention of appellants that exclusive original jurisdiction in probate matters was vested in the probate courts of this state by the enactment of the New Mexico Constitution; and, further, that under the Constitution, art. VI, § 13, jurisdiction in probate is "excepted" from the jurisdiction which may be exercised by or conferred upon the district courts. The latter section provides:

> "The district court shall have original jurisdiction in all matters and causes not excepted in this Constitution, and such jurisdiction of special cases and proceedings as may be conferred by law, and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, and supervisory control over the same. The district courts, or any judge thereof, shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, prohibition, and all other writs, remedial or otherwise in the exercise of their jurisdiction; provided, that no such writs shall issue directed to judges or courts of equal or superior jurisdiction. The district courts shall also have the power of naturalization in accordance with the laws of the United States. Until otherwise provided by law, at least two terms of the district court shall be held annually in each county, at the county seat."

The appellees argue, in support of the jurisdiction asserted by the lower court under § 16–3–20, supra, that the Constitution does not itself invest the probate courts with exclusive original jurisdiction; that probate proceedings both in territorial days and after statehood have been considered to be and are special in nature and described by statute; that the Constitution recognized the province of the legislature in such matters, expressly providing the probate courts should have the same jurisdiction as exercised under territorial enactments *until otherwise provided by law;* that under Const. art. VI, § 13, it is expressly recognized that district courts shall have such jurisdiction of special cases and proceedings *as may be conferred by law.*

The argument of appellants that jurisdiction in probate is by the Constitution excepted from that jurisdiction which may be conferred upon district courts depends for its validity upon acceptance of their premise that the Constitution does confer "exclusive original jurisdiction" in probate upon the probate courts; they do not attempt to argue that probate proceedings are not special proceedings and creatures of statute, jurisdiction over which might otherwise be lodged in the district courts under art. VI, § 13. We cannot accept the premise stated.

In In re Conley's Will, 1954, 58 N.M. 771, 276 P.2d 906, 908, we said the word "exclusive" had, by our decision in Dunham v. Stitzberg, 1949, 53 N.M. 81, 201 P.2d

1000, been interpolated into art. VI, § 13, so as to make it read " 'The district court shall have *exclusive* original jurisdiction in all matters and causes not excepted in this constitution.' " Of this we said in the Conley case:

"* * * Significance is to be attached to the omission by the framers of the constitution of this word, unless elsewhere in the constitution we find a mandate to interpolate by implication where the framers of the constitution themselves omitted it."

■ In view of the Constitutional provision, "A probate court is hereby established for each county, which * * * *until otherwise provided by law,* shall have the same jurisdiction as is now exercised by the probate courts of the Territory of New Mexico" and the further fact that probate proceedings are special in their nature and creatures of statute, In re Towndrow's Will, supra, we not only are unable to find any mandate that the word "exclusive" be read into art. VI, § 23, but we think the direction given by proper construction is in direct opposition to such reading or interpretation.

■ The words "until otherwise provided by law" certainly mean something. The appellants maintain they mean that the probate courts shall have exclusive original jurisdiction of probate matters until a law is passed taking such jurisdiction away from the probate courts and confirming it on some other tribunal. Obviously, we need not pass upon whether the legislature might validly abolish the probate courts, but where is there any reason in saying that the legislature has power to do away with them entirely and to confer their jurisdiction upon some other court, and yet deny it has the lesser power of investing concurrent jurisdiction upon the district courts? The proposition is untenable. Instead, we believe it is provided that the legislature shall have power to modify or alter the particular exercise of probate jurisdiction; that included within this grant is power to confer concurrent probate jurisdiction upon the district courts; that the power has been properly exercised and § 16–3–20 supra, is not constitutionally objectionable.

It follows that the proceedings below withstand the challenge they were in excess of substantive jurisdiction.

■ Upon the basis of the determination made, if any error was committed by the lower court in excluding from evidence the offered exhibit of appellants, such error was harmless. The action of the trial court is affirmed, and it is so ordered.

———◆———

COMPTON, C. J., LUJAN and SADLER, JJ., and EDWIN L. SWOPE, District Judge, concur.

KIKER, J., not participating.

On Motion for Rehearing.

McGHEE, Justice.

In our opinion filed herein reference is made to the fact the testamentary trustees

(who were also executors of decedent's estate) were served with notice of hearing upon the final account and report in their individual names. Our opinion then stated appellants had made no point thereof. On this motion for rehearing, appellants now contend that some statements made in their reply brief under their point objecting that they (appellants) were not served with such notice sufficiently raised the point now argued. We think otherwise, Rule 15(14, 15), Supreme Court Rules; Montgomery v. Karavas, 1941, 45 N.M. 287, 114 P.2d 776, but will hold our rule in abeyance because of the nature of the question. We will also assume for purposes of our consideration that appellants have standing to question the character of service upon their trustees.

■ Directing our attention to the question raised, it is immediately noted that Walter G. Kirkbride, Carl F. Eisenhour and Clarence H. Hickok, the named devisees in the will as testamentary trustees, duly qualified and acting as such, were specifically named as trustees in the final account and report. Each of them entered an appearance in the proceedings and consented that final judgment be entered. Their entry of appearance and consent to judgment under these circumstances must place beyond doubt their participating in the probate proceedings in their capacity as trustees, fully curing any defects which might exist in the service of notice upon them. Hignett v. Atchison, T. & S. F. Ry. Co., 1928, 33 N.M. 620, 274 P. 44. Compare State ex rel. Skinner v. District Court, 1955, 60 N.M. 255, 291 P.2d 301.

■ The rule is where it is doubtful in what capacity a party is sued, reference may be had to the record to determine the question. Boland v. Cecil, 1944, 65 Cal. App.2d Supp. 832, 150 P.2d 819; Duke v. Williams, 1955, 92 Ga.App. 151, 88 S.E.2d 289; Rose v. Third Nat. Bank, 1944, 27 Tenn.App. 553, 183 S.W.2d 1.

The only case relied upon by appellants is Farmers' Loan & Trust Co. v. Essex, 1903, 66 Kan. 100, 71 P. 268, which was concerned with the effect of a *default* judgment purporting to bar a first mortgage lien assigned of record to "Farmers' Loan & Trust Company, trustee", and service by publication had been had upon that company without the designation of trustee. The case has no application here.

The objection is ruled against appellants and their motion for rehearing is hereby denied. It Is So Ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., and EDWIN L. SWOPE, D. J., concur.

KIKER, J., not participating.